05-CV-01813-CMP

Richard A. Smith, WSBA #21788
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883
Fax (206) 860-4187
email: rasmithwa@igc.org

Attorneys for Plaintiff

**ORIGINAL**

FILED ___ ENTERED
LODGED ___ RECEIVED
NOV 1 2005
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
            DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WASTE ACTION PROJECT, a non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> CITY TRANSFER, INC. <br><br> Defendant. | CV05·1813 JCC <br><br> COMPLAINT |

## I. INTRODUCTION

1. This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness fees, for Defendant's repeated and ongoing violations of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permits authorizing discharges of pollutants from Defendant's facility to waters of the United States

COMPLAINT - 1

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## II. JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).

3. Under Section 505 (b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Defendant of Defendant's violations of the Clean Water Act and of Plaintiff's intent to sue under the Clean Water Act by letter dated and postmarked August 19, 2005 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. Plaintiff notified the Defendant's registered agent, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") of its intent to sue Defendant by mailing copies of the Notice Letter to these officials on August 19, 2005.

4. More than sixty days have passed since the notice was served and the violations complained of in the Notice Letter are continuing or reasonably likely to continue to occur. Defendant is in violation of its NPDES permit and the Clean Water Act. Neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

5. Venue is appropriate in the Western District of Washington under Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the source of the violations complained of is located in this District.

COMPLAINT - 2

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## III. PARTIES

6. Plaintiff Waste Action Project is suing on behalf of itself and its member(s). Waste Action Project is a non-profit corporation organized under the laws of the State of Washington. Waste Action Project is a membership organization and has at least one member who is injured by Defendant's violations. Waste Action Project is dedicated to protecting and restoring natural resources, particularly the water resources of the State of Washington.

7. Plaintiff has representational standing to bring this action. The recreational, economic, aesthetic and/or health interests of Waste Action Project and its member(s) have been, are being, and will be adversely affected by Defendant's violations of the Clean Water Act. The relief sought in this lawsuit can redress the injuries to these interests.

8. Plaintiff has organizational standing to bring this action. Plaintiff has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of Washington State. Defendant has failed to fulfill monitoring, reporting, recordkeeping, and planning requirements, among others, necessary for compliance with its NPDES permits and the Clean Water Act. As a result, Plaintiff and its organizational interests have been adversely affected by Defendant's violations. These injuries are fairly traceable to Defendant's violations and redressable by the Court.

9. Defendant City Transfer, Inc. is a corporation organized under the laws of the State of Washington. Defendant owns and operates a gravel mining operation and an associated truck and equipment maintenance facility located in or near Sumner, Washington, which discharges pollutants to the White River and its tributaries, which are navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

COMPLAINT - 3

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## IV. FACTS

10. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the Clean Water Act. Section 301(a) prohibits, <u>inter alia</u>, such discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

11. The State of Washington has established a federally approved state NPDES program administered by the WDOE. WASH. REV. CODE § 90.48.260; WASH. ADMIN. CODE ch. 173-220. This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

12. The WDOE, under Section 402(a) of the Clean Water Act, 33 U.S.C. § 1342(a), issued NPDES Permit Number WAG-50-1031 to Defendant on August 6, 1999 (hereafter "1999 permit"), authorizing Defendant to discharge pollutants from its operations to the White River and its tributaries. Under the same section of the Clean Water Act, the WDOE issued a subsequent NPDES Permit Number WAG-1031 to Defendant on March 9, 2005 (hereafter "2005permit"). The 1999 permit remained in effect until the 2005 permit became effective on March 9, 2005. These permits impose monitoring and reporting requirements as well as other special and general conditions of discharge and facility operation, including operational and structural requirements to control pollutant discharges.

13. Discharges from Defendant's operations contribute to pollution of the receiving waters, to the impacts of that pollution on the ecology of the White River, and to Plaintiff's and its member's injuries resulting from that pollution.

COMPLAINT - 4

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

14. In the vicinity of Defendant's operations the White River and its tributaries are used by the citizens of Washington and visitors, as well as at least one of Plaintiff's members, for recreational activities, including nature watching. Plaintiff's member(s) also derive(s) aesthetic benefits from these waters. Plaintiff's and its member's enjoyment of these waters and these activities is diminished by the polluted state of the waters and Defendant's contributions to such polluted state.

15. Defendant has violated the conditions of the 1999 permit and the 2005 permit and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to comply with the permits' monitoring, reporting, recordkeeping, planning, pollution prevention, and other requirements. These violations are described in parts I through IX of Plaintiff's Notice Letter, which is incorporated herein by reference. See Exhibit 1.

16. Defendant discharges pollutants from points not identified in its NPDES permits in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), as described in section I of Plaintiff's Notice Letter, which is incorporated herein by reference. See Exhibit 1.

17. Defendant's violations degrade the environment and the water quality of the receiving waters.

18. Defendant's violations were avoidable had Defendant been diligent in overseeing facility operations and maintenance and in attending to its obligations under the CWA.

19. Defendant has benefited economically as a consequence of its violations and its failure to implement improvements at the facility.

COMPLAINT - 5

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## V.  CAUSES OF ACTION

FIRST CAUSE OF ACTION – VIOLATION OF NPDES PERMIT CONDITIONS

20. The preceding paragraphs and the allegations in the Notice Letter are incorporated herein.

21. Defendant's violations of its NPDES permits described herein and in the Notice Letter constitute violations of sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as defined by section 505, 33 U.S.C. § 1365.

22. On information and belief, the violations committed by Defendant are ongoing or reasonably likely to continue to occur. Any and all additional violations of the permits, which occur after those described in Plaintiff's Notice Letter but before a final decision in this action, should be considered continuing violations subject to this Complaint.

23. Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate its NPDES permit to the further injury of the Plaintiff, its member(s), and others.

SECOND CAUSE OF ACTION – UNPERMITTED DISCHARGE

24. The preceding paragraphs and the allegations in the Notice Letter are incorporated herein.

25. Some of Defendant's discharges of pollutants to navigable waters are from points not identified by Defendants' NPDES permits, and therefore not authorized by such permits. Defendant is therefore in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), which

COMPLAINT - 6

makes illegal any point source discharge of pollutants without an NPDES permit, and such violation is of "effluent standard(s) or limitation(s)" as defined by section 505, 33 U.S.C. § 1365.

26.  On information and belief, the violations committed by Defendant are ongoing or reasonably likely to continue to occur. Any and all additional violations of the permits, which occur after those described in Plaintiff's Notice Letter but before a final decision in this action, should be considered continuing violations subject to this Complaint.

27.  Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate its NPDES permit to the further injury of the Plaintiff, its member(s), and others.

## VI.  RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A.  Issue a declaratory judgment that Defendant has violated and continues to be in violation of Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342;

B.  Enjoin Defendant from operating its facility in a manner that results in further violations of Defendant's NPDES Permits or the Clean Water Act;

C.  Authorize Plaintiff, from the period beginning on the date of the Court's Order and running for one year after Defendant achieves compliance with all of the conditions in its NPDES permit, to sample or to arrange monitoring of conditions at and any discharge from Defendant's facilities with the cost of the monitoring to be borne by Defendant;

D.  Order Defendant to provide Plaintiff, for a period beginning on the date of the Court's Order and running for one year after Defendant achieves compliance with all of the conditions of its NPDES permit, with copies of all reports and other documents which Defendant

COMPLAINT - 7

submits to the USEPA or to the WDOE regarding Defendant's NPDES permit, at the time it is submitted to these authorities;

E.  Order Defendant to take appropriate action to remediate the harm caused by its violations;

F.  Order Defendant to pay civil penalties of $32,500.00 per day of violation for each violation committed by Defendant pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

G.  Award Plaintiff its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

H.  Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 1st day of November, 2005.

SMITH & LOWNEY, PLLC

By: _____
RICHARD A. SMITH, WSBA #21788
Smith & Lowney, PLLC
2317 East John St.
Seattle, WA 98112
(206) 860-2883
Fax: (206) 860-4187
rasmithwa@igc.org
Attorneys for Plaintiff

# SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883, FAX (206) 860-4187

EXHIBIT 1

August 19, 2005

**Via Certified Mail - Return Receipt Requested**
Keith Benson
Managing Agent
City Transfer, Inc.
P.O. Box 1850
Sumner, WA 98390

Re:   **NOTICE OF INTENT TO FILE SUIT UNDER THE CLEAN WATER ACT**

Dear Mr. Benson and/or Managing Agent:

    We represent Waste Action Project, P.O. Box 4832, Seattle, WA 98104, (206) 261-2670. Any response or correspondence related to this matter should be directed to us at the letterhead address. This letter is to provide you with sixty days' notice of Waste Action Project's intent to file a citizen suit against City Transfer, Inc. under Section 505 of the Clean Water Act ("CWA"), 33 USC § 1365, for the violations described below.

    City Transfer, Inc. ("CTI") has violated and continues to violate the CWA (see Sections 301 and 402 of the CWA, 33 USC §§ 1311 and 1342) and its National Pollutant Discharge Elimination System ("NPDES") Permit No. WAG 50-1031, coverage under which was issued to CTI by the Department of Ecology on March 9, 2005 (hereinafter, the "2005 permit"), with respect to pollutant discharges from the facility located at or 2700 East Valley Highway East, Sumner, Washington to the White River and tributaries thereto. Furthermore, CTI violated conditions of its previous NPDES Permit No. WAG 50-1031, under which CTI was covered from August 6, 1999, until March 9, 2005 (hereinafter, the "1999 permit").

    In addition, CTI has violated Sections 301(a) and 404 of the CWA, 33 U.S.C. §§ 1311(a) and 1344, by discharging dredged or fill material into waters of the United States without the required permit from the United States Army Corps of Engineers as described in Section X of this notice of intent to sue.

    I.    UNAUTHORIZED DISCHARGES AND DISCHARGE POINTS

    The CTI-specific Coverage Page of the 2005 permit identifies only a single discharge point, "Roadside ditch – E Valley Highway", and identifies the discharge only as mine dewatering water. This is based on the information provided by CTI to Ecology in its January 26, 2004, permit renewal application, which identifies a "12" Drisco Pipe To E. Valley Highway" as the CTI's only point of discharge. In fact, however, CTI has two additional sets of point source discharges: 1) along the east side of the access road to CTI's mining operation there is a discharge of pollutants, including mine-dewatering

1

water, stormwater, and groundwater, which carry turbidity, sediments, and suspended solids, and other pollutants, which runs in a small gully down the hill above the road and then down the east side of the road and into approximately four catch basins which then discharge onto the slope on the west side of the road and into wetlands and conveyances tributary to the White River (the "access road discharges"); and 2) at the CTI shop and office complex on the west side of East Valley Highway across from the entrance to the CTI mining operation there are approximately eight catch basins through which CTI discharges pollutants, including stormwater and process wastewater from truckwashing and dust control spraydown, which carry turbidity, suspended solids, oil and grease, lead, zinc, and other metals, and other pollutants, to the City of Sumner storm sewer system and to its outfalls to the White River and/or its tributaries (the "truck shop discharges"). Discharges of mine dewatering water and groundwater from the access road discharges and of process wastewater from the truck shop discharges occur on a daily basis as they have for the past five years. Stormwater discharges from both additional sets of discharge points occurs during and after every storm event of one-tenth of an inch or more during a twenty-four hour period.

A.  **Unpermitted Discharges.** Since neither the access road discharges nor the truck shop discharges are identified in the site-specific coverage pages for either the 2005 permit or the 1999 permit, these discharges are not authorized by these permits and are therefore unpermitted discharges of pollutants from point sources to navigable waters in violation of CWA Sections 301(a) and 402, 33 U.S.C. §§ 1311(a) and 1342.

B.  **Unauthorized Discharges.** In addition, or in the alternative, since neither the access road discharges nor the truck shop discharges are identified in the site-specific coverage pages for either the 2005 permit or the 1999 permit, these discharges are not authorized by these permits and are therefore in violation of Condition G1 of the 1999 permit and the 2005 permit. Condition G1 (identical in both permits) requires that "[a]ll discharges and activities authorized by this general permit shall be consistent with the terms and conditions of this general permit." CTI has violated these conditions by discharging pollutants from these additional point sources which is not consistent with the terms and conditions of the permits.

II.  MONITORING

Condition S4.A. of the 2005 permit requires that monitoring be performed as described by the matrix in Condition S2. The matrix requires that samples be taken of the access road discharges and the truck shop discharges and analyzed for the following parameters on the following schedule: pH/quarterly; turbidity/twice monthly; total suspended solids/quarterly; and temperature/weekly. Furthermore, these conditions require visual monitoring for visible sheen on a daily basis, and a measurement or estimate of discharge flow each time turbidity or temperature sampling is conducted (S2.A..6.). In addition, Condition S4.A.3. of the 2005 permit requires CTI to conduct a visual inspection of points of discharge at least once a month when discharges occur. Also, Condition S4.D. of the 2005 permit requires CTI to conduct visual monitoring for oil sheen at all surface water discharges points (or representative locations where water collects prior to discharge) each day that equipment operates.

Condition S4.A. of the 1999 permit required that sampling and analysis of the access road discharges and the truck shop discharges be performed on the following schedule: turbidity/twice monthly; pH/monthly, temperature/weekly, and total suspended

2

solids/quarterly. In addition, Condition S4.A.4. of the 1999 permit required CTI to conduct a visual inspection of points of discharge at least monthly when discharges occur.

CTI has violated these conditions by failing to perform any of the required sampling or analysis of the access road discharges and the truck shop discharges during the past five years.

### III. MONITORING PLAN

Condition S5. of the 2005 permit requires CTI to maintain and comply with a monitoring plan developed in accordance with Conditions S2., S4., and S5. S5.A. requires that the monitoring plan identify the required parameters for monitoring, the frequency of sampling, the locations for sampling, and the procedures for sampling. In addition, S5.A. requires that the plan list all the industrial activities at the site; that it include a site map that identifies the locations of all sampling points, the types of discharges that occur at each point, and whether the discharges are to surface or ground water; that the plan assign a unique label to each sampling point; and that the plan list standard procedures used at the facility for collecting samples for analysis to be developed in accordance with specified guidance materials.

Condition S5. and S5.A. of the 1999 permit required substantially the same of CTI's monitoring plan.

CTI is in violation of these conditions because its monitoring plan includes none of the requisite information identified above, either for the authorized discharge or for the access road discharges or the truck shop discharges.

### IV. REPORTING AND RECORKEEPING

A. Condition S6.A.3. of the 2005 permit and Condition S6.A. of the 1999 permit require CTI to submit the results of the monitoring required by the permit on discharge monitoring reports ("DMRs") on a quarterly basis. CTI has violated this condition by failing to submit to Ecology DMRs summarizing the results of the monitoring identified in Section II of this notice of intent to sue.

B. Condition S6.B. of the 2005 permit and Condition S6.B. of the 1999 permit require CTI to retain records of all monitoring information for a minimum of three years, including all calibration and maintenance records and all original recordings for continuous monitoring instrumentation, and copies of all reports required by the permits. CTI has violated these conditions by failing to retain monitoring information, including the monitoring information identified in Sections II, III, IV, and VI of this notice of intent to sue, as required.

C. Condition S6.E. of the 2005 permit and Condition S6.E. of the 1999 permit require CTI, in the event that it is unable to comply with any of the permit terms and conditions due to any cause, to 1) immediately take action to stop, contain, and cleanup unauthorized discharges or otherwise stop the violation, correct the problem and, if applicable, repeat sampling and analysis of any violation immediately; 2) notify Ecology as specified within 24 hours of when the CTI becomes aware of the violation ("immediately" in the 1999 permit); and 3) submit a detailed written report to Ecology

within thirty days, such report to describe the nature of the violation, corrective action taken and/or planned, steps to be taken to prevent a recurrence, results of the re-sampling, and any other pertinent information. CTI has violated these conditions with respect to each and every violation described in this notice of intent to sue.

### V. STORMWATER POLLUTION PREVENTION PLAN

Condition S9.A. of the 2005 permit requires CTI to have a stormwater pollution prevention plan ("SWPPP") specifically developed for it, and that the SWPPP be fully implemented and updated. Condition S9.A. and B. of the 2005 permit specify the contents of the SWPPP that must be fully implemented. Condition S9. of the 1999 permit includes comparable requirements.

CTI is in violation of these requirements as follows:

A. CTI's SWPPP is not consistent with permit requirements and does not include best management practices ("BMPs") necessary to provide all known, available, and reasonable methods of treatment and control ("AKART") in violation of Condition S9.A.1. of the 2005 permit, and CTI has not implemented such BMPs in violation of the Condition S9.A. requirement. In particular, CTI's SWPPP does not include, and CTI has not implemented, any BMPs for control or treatment of the access road discharges or the truck shop discharges, or BMPs to control discharges, point or non-point source, from the various portions of road and piles of debris constructed east of and above CTI's main mining operation (and which are the subject of the allegations in Section X of this notice of intent to sue).

B. CTI's SWPPP does not include, and CTI has not implemented, measures to prevent the addition of process water or mine dewatering water into stormwater, or measures to verify that non-stormwater discharges do not enter the stormwater treatment system in violation of Conditions S9.A. and S9.A.3. of the 2005 permit and Conditions S9. and S9.A.1. of the 1999 permit. Specifically, CTI's wastewater management system at its main mining site commingles process water, mine dewatering water, and stormwater. Furthermore, CTI fails to keep process water and mine dewatering water separated from stormwater at the access road discharges. In addition, CTI fails to keep process water and stormwater separated at the truck shop.

C. CTI's SWPPP includes no adequate site map in violation of Condition S9.B.1. of the 2005 permit and of Condition S9.B.1. of the 1999 permit. CTI's SWPPP does not include a site map that locates and documents the stormwater drainage and discharge structures, or an outline of the stormwater drainage areas for each stormwater discharge point, nor does it identify nearby surface water bodies and underlying aquifers. In addition, the SWPPP includes no site map that identifies all areas associated with industrial activities, including, but not limited to loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor processing, processes that generate dust and particles, roofs or other surfaces exposed to air emissions from a process area, on-site waste treatment, storage, or disposal, vehicle and equipment maintenance and/or cleaning, paved areas and buildings, and underground storage of materials or products.

D. CTI's SWPPP includes no adequate inventory of materials in violation of Condition S9.B.2. of the 2005 permit and Condition S9.B.2. of the 1999 permit. CTI's

4

SWPPP includes no list of all the types of materials handled at the site that can be exposed to precipitation or run-off.

    E.    CTI's SWPPP includes no adequate source control BMPs, and CTI has not implemented such, in violation of Conditions S9. and S9.B.3. of the 2005 permit and S9. and S9.B.4. of the 1999 permit. CTI's SWPPP does not include, and CTI has not implemented, source control BMPs for fueling at dedicated stations, mobile fueling, loading and unloading areas, storage of liquid in above-ground tanks, washing or steam cleaning vehicles/equipment, dust control, stabilized entrances and parking areas, wheel washes/tire baths, or storage or transfer of solid raw materials, by-products, or finished products. CTI's SWPPP includes only generally applicable BMP descriptions photocopied from Ecology's Stormwater Management Manual for Western Washington instead of BMPs specific to its operations as required by Condition S9.A. of the 2005 permit. CTI's SWPPP also fails entirely to address BMPs outside of the original permitted 86 acre mining site. The SWPPP fails to address BMPs for the various portions of road and piles of debris constructed north and east of and above CTI's main mining operation (and which are the subject of the allegations in Section X of this notice of intent to sue).

    F.    CTI's SWPPP includes no adequate runoff conveyance and treatment BMPs, and CTI has not implemented such, in violation of Conditions S9. and S9.B.4. of the 2005 permit. CTI's SWPPP does not include, and CTI has not implemented, runoff conveyance BMPs, including but not limited to interceptor dikes, swales, channel lining, pipe slope drains, and outlet protection as these conditions require. CTI's SWPPP does not include, and CTI has not implemented, treatment BMPs, including but not limited to oil/water separators, biofiltration swales, infiltration or detention basins, sediment traps, chemical treatment systems, and constructed wetlands. CTI's SWPPP includes only generally applicable BMP descriptions photocopied from Ecology's Stormwater Management Manual for Western Washington instead of BMPs specific to its operations as required by Condition S9.A. of the 2005 permit.

    G.    CTI's SWPPP includes no adequate erosion and sediment control plan ("ESCP"), and CTI has not implemented such, in violation of Conditions S9. and S9.B.6. of the 2005 permit and Condition S10. of the 1999 permit. Specifically, CTI's SWPPP and ESCP do not address, and CTI has not implemented, stabilization BMPs or runoff conveyance and treatment BMPs at either the high, steep westward facing wall that is currently being mined or the various portions of road and piles of debris constructed north and east of and above CTI's main mining operation (and which are the subject of the allegations in Section X of this notice of intent to sue). At both of these locations, soils have not been stabilized and protected from erosion by the timely application of effective BMPs, existing vegetation has not been preserved, and cut slopes and fill slopes have not been designed and constructed in a manner that will minimize erosion.

    VI.    STORMWATER INSPECTIONS

Condition S10. of the 2005 permit and Condition S11. of the 1999 permit require CTI to conduct at least two inspections each year – at least one during the wet season and at least one during the dry season. The wet season inspection is required to be conducted during a rainfall event adequate in intensity and duration to verify the items identified in Condition S10.A. of the 2005 permit and in Condition S11.A. of the 1999 permit. The dry season inspection is required to be conducted after at least seven

5

consecutive days of no precipitation and is to determine the presence of non-stormwater discharges to the stormwater drainage system. If a discharge related directly or indirectly to process water is so discovered, CTI is required to comply with the non-compliance notification requirements of Conditions S6.E. and to eliminate the discharge within ten days. Under S10.C. of the 2005 permit, all BMPs are to be inspected, maintained, and repaired during or after inspections. Under S10.D. of the 2005 permit, erosion and sediment control BMPs are required to be inspected at least once every seven days and within 24 hours after any storm event of greater than 0.5 inches of rain per 24 hour period. A file containing a log of observation shall be maintained as part of the ESCP. Furthermore, under Condition S10.D. of the 2005 permit and Condition S11.C. of the 1999 permit, CTI must prepare and retain as part of the SWPPP a report on each inspection that summarizes the scope of the inspection, the personnel conducting the inspection, the date(s) of the inspection, the major observations relating to the implementation of the SWPPP, and any actions taken as a result of the inspection.

CTI has violated these conditions by failing to perform at least two inspections per year in the manner specified, by failing to perform wet- and dry-season inspections as specified, by failing to conduct inspections of erosion and sediment control BMPs as specified, by failing to maintain a file containing a log of erosion and sediment control inspections observations, and by failing to prepare and retain as part of the SWPPP an inspection report, as specified, for each such inspection.

VII.  SPILL CONTROL PLAN

CTI is in violation of Condition S11. of the 2005 permit and Condition S12. of the 1999 permit because it has no adequate spill control plan that satisfies the requirements of these conditions.

VIII.  SOLID WASTE DISPOSAL

CTI is in violation of Condition S12.A. of the 2005 permit and Condition S13.A. of the 1999 permit because CTI has not handled and disposed of all solid waste material in such a manner as to prevent its entry into waters of the state. Specifically, CTI has placed into wetlands that are waters of the state solid waste from its land clearing and road building activities related to the portions of road and piles of debris constructed east of and above CTI's main mining operation (and which are the subject of the allegations in Section X of this notice of intent to sue).

IX.  NOTIFICATION OF CHANGE IN COVERED ACTIVITIES

Condition G6. of both the 2005 and 1999 permits requires CTI to submit a new application for coverage whenever facility expansions, production increases, or process modification are anticipated that will result in new or substantially changed discharges of pollutants or violate the terms and conditions of the permits. CTI has violated these conditions because when, in 2003 and/or 2004, it substantially expanded the size of its mining operation, which resulted in increased pollutant discharges, new point or non-point discharges to the north and east from the various roads and piles of debris constructed east of and above CTI's main mining operation, and additional violations of SWPPP requirements as described in Section VI of this notice of intent to sue, CTI did not submit a new application for coverage.

X. **UNPERMITTED AND ILLEGAL DISCHARGE OF DREDGED OR FILL MATERIAL TO WATERS OF THE UNITED STATES**

CTI has violated and continues to violate Sections 301(a) and 404 of the CWA, 33 U.S.C. §§ 1311(a) and 1344, by discharging dredged or fill material to wetlands, which are waters of the United States, without a permit from the United States Army Corps of Engineers. The dredged and/or fill material has been placed during the course of clearing, grading, road construction, or similar activities in approximately two acres of wetlands comprising pockets of wetlands under the location of the current thirty to forty foot high debris pile on CTI's property which was created during the past year by CTI. The debris pile filling the wetlands consists of the clearing debris from the clearing on CTI's property that is not being mined or used or for roads or is sitting unused. The debris pile filling the wetlands is to the east of the area currently being mined. It has a dirt loop road on top of it. On the north side it has a face of debris approximately 40 feet high. The approximate area of filled wetlands is circled in red and labeled "wetlands" on the photo that is Attachment 1 to this notice of intent to sue. These wetlands are tributary to the White River via the creek running along Forest Canyon Road.

The above-described violations reflect only what information currently available to Waste Action Project indicates. These violations are ongoing. Waste Action Project intends to sue for all violations, including those yet to be uncovered and those committed subsequent to the date of this notice of intent to sue.

Under Section 309(d) of the CWA, 33 USC § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $32,500 per day. In addition to civil penalties, Waste Action project will seek injunctive relief to prevent further violations and to remediate harm under Sections 505(a) and (d) of the CWA, 33 USC § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover costs including attorney's fees.

Waste Action Project believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against CTI under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

SMITH & LOWNEY, P.L.L.C.

By: _____
Richard A. Smith

7

c:  Jay Manning, Director, Washington Department of Ecology
    Steve Johnson, Administrator, Environmental Protection Agency
    Michael Bogert, Administrator, Environmental Protection Agency, Region 10
    SC&B Services, Inc.

Wetlands

Slopes to North
Foust Canyon Road and Stream →

Location of Photos #21 and #22

Pierce/Sumner Line →

Approximate North Boundary of 86 Acres ↓

04/19/05
#14A. Taken in easterly direction. Showing the newly mined and cleared areas north of the 86 acres and the approximate Pierce/Sumner line.